IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS MARTIN, | ) | |
| | ) | Case No. 08 C 6153 |
| Plaintiff, | ) | |
| | ) | Judge Nordberg |
| v. | ) | |
| | ) | Magistrate Judge Cole |
| REDLINE RECOVERY | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff respectfully requests that this Court compel defendant Redline Recovery Services, LLC to properly respond to discovery. In support of this motion, plaintiff states:

This is a Fair Debt Collection Practices Act 15 U.S.C. §1692 et seq. action based upon defendant failing to adequately identify itself during telephone messages left for consumers while collecting debts. Plaintiff alleges that defendant's telephone messages did not identify defendant as a debt collector, and did not identify itself as "Redline Recovery Services, LLC" in over one hundred telephone messages to consumers in the Seventh Circuit. As described below, plaintiff's counsel have tried to work with defendant in resolving these discovery issues.

Defendant's position and tactics smack of gamesmanship: it has sent a Rule 68 offer of judgment in an attempt to moot the class allegations in the complaint -- a tactic that forces plaintiff to file a motion for class certification within ten days or risk forfeit of all of the class members' claims.

In the same breath as its offer of judgment, Redline has refused to produce information and documentation that was timely and properly requested that plaintiff needs to properly support his motion for class certification. Defendant has essentially elected to engage

1

in protected discovery which is "the bane of modern litigation." *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000) (Posner, J.). In short, defendant has set plaintiff between a rock and a hard place to which Redline cannot just ignore. *Flentye v. Kathrein*, 06 C 3942, 2007 U.S. Dist. LEXIS 74260 * 5 (N.D. Ill. Oct. 2, 2007) (Cole, MJ.) (Discovery, "It is intrusive, unpleasant, time-consuming and costly. It is, like life itself, 'nasty [and] brutish. . . ."' Hobbes, Leviathan, Chapter XIII. Unfortunately, it is not generally 'short.' However, it is the inevitable concomitant of litigation and neither party is free to ignore the obligations imposed by the discovery rules.").

Plaintiff therefore moves to compel the discovery necessary to support his motion for class certification, so that the motion (which will undoubtedly have been filed when this motion is decided) may be supplemented, or so that plaintiff may attach these materials to his reply in support of class certification.

### I. Discovery Generally

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Rules have broadened the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

"[T]he discovery-deposition provisions of the Federal Rules, were intended to insure 'proper litigation' by making the trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963) (internal citations and quotations omitted).

2

Furthermore, complete interrogatory responses may help the parties avoid unnecessary depositions and further cost to the parties. *In re Shopping Carts Antitrust Litigation*, 95 F.R.D. 299, 307-308 (S.D.N.Y. 1982).

Evasive responses to discovery are sanctionable at the discretion of the Court. The District Judge viewed evasive discovery responses as abusive in *Howard v. Sweetheart Cup Co.*, 2001 U.S. Dist. LEXIS 8682, at *6-7 (N.D.Ill. June 27, 2001), and issued sanctions against defendant:

> [Defendant's] production...included only some of the responsive documents. They evidently believed that by giving a cleverly-worded response to the request (a response of a type this Court has seen numerous times both in the practice of law and since appointment to the bench), they could pick and choose the documents they thought were relevant....
> ****
> [T]his type of answer hides the ball. It leaves the plaintiff wondering what documents are being produced and what documents are being withheld. Furthermore, it permits the defendant to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld.
>
> The defendant, having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide the question of relevance which is unquestionably the decision of the judge.
>
> Asserting a relevance objection, then proceeding to agree to produce "relevant, non- privileged" documents "subject to and without waiving" that objection, serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review defendant's decisions. [Id., quoting *Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998)(certain punctuation omitted).]

Objections must be proper, or the result is waiver. "There is no provision in the Federal Rules for preserving objections. . . Having failed to answer or make specific legitimate objections to particular interrogatories within the time allowed, defendants were held to have waived objections to all interrogatories." *Hobley v. Burge*, 2003 U.S. Dist. LEXIS 20585, at *11 (N.D.Ill. 2003); vacated on other grounds, 433 F.3d 946, 947 (7th Cir. 2006) "[T]he mere

statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris Corp.,* 677 F.2d 985, 992 (3d Cir. 1982). Compelling production of materials sought promotes justice and quick resolution a matter. *Yancey v. Hooten*, 180 F.R.D. 203 (D.Conn. 1998) (compelling discovery in FDCPA case). *Lucas v. GC Services*, 226 F.R.D. 328 (N.D.Ind. 2004) (FDCPA 1692g action) (sister case lost merits on appeal) compelling all discovery requests as sanction. "The defendants do not get to determine unilaterally the scope and timing of discovery." *Lucas v. GC Servs. L.P.*, 226 F.R.D. 328, 331 (N.D. Ind. 2004)

## II.     Local Rule 37.2 Meet and Confer Requirement

Plaintiff counsel attempted to resolve these discovery issues without court intervention. The discovery was propounded on January 8, 2009, and defense counsel requested a series of extensions to which, in the spirit of cooperation, plaintiff agreed.

Defendant's responses were finally produced on March 4, 2009. Exhibit 1. On March 5, 2009, defendant faxed plaintiff an offer of judgment, without plaintiff's consent to the electronic sending of the offer, a copy of which was sent via mail.

The parties held a telephonic discovery conference on March 10, 2009, attended by Curtis Warner and Alexander H. Burke for plaintiff, and Nabil Foster for defendant. Plaintiffs followed up with the email attached as Exhibit 2, which sums up the disputes. The offer of judgment places a time limitation on when plaintiff needs the information. Therefore, plaintiff's counsel requested that the materials be produced by March 17, 2009. Alternatively, plaintiff

4

suggested that defendant could withdraw its offer of judgment without prejudice, which would give the parties more time to deal with the discovery issues.

Defendant never responded to these requests for more information, and has not responded to plaintiff's numerous communications by telephone and email on March 13 through 16, 2009. And while defense counsel asserted in a letter sent via US Mail on March 13, 2009, that defendant would produce some of the materials requested herein upon entry of a protective order, defendant has not returned numerous calls and emails regarding the protective order, and insists on communicating by mail, despite the time crunch it has created for plaintiff. Exhibit 3 contains several emails and email exchanges from March 13-16.

The bottom line is that defendant has painted plaintiff into a corner. It created a deadline for plaintiff's motion for class certification, and has been sluggish in producing materials that both parties know are necessary for the motion. Plaintiff cannot wait any longer; this motion must be filed.

### III. Discovery Sought and Reasons Why the They are Discoverable in this Case.

#### A. Policies, Practices and Procedures relating to telephone messages and telephone calls to consumers.

Plaintiff issued several discovery requests that ask for information concerning defendant's practices, policies and procedures relating to telephone messages and phone calls; document request 5. Defendant has produced some opaque policies, but not all of them. It appears that the defendant has produced materials that serve its purposes for avoiding class certification, only.

5

For example, it has produced some scripts of telephone messages, but none that are even close to the one that was left for plaintiff twice. And some of the scripts that were produced have dates from after this lawsuit was filed.

The scripts will be a key piece of evidence relating to class certification. Indeed, the case is based upon defendant's improper telephone messages left for debtors. Defendant has indicated that it has scripts for what collectors should say, and has produced only compliant scripts with dates from around the time suit was filed, which have different wording from the messages that were left for plaintiff. Indeed, defendant's response to interrogatory 3 says that "employees that worked on contacting Plaintiff received training on Redline's procedures and policies regarding contacting individuals." Exhibit 1.

These policies, practices and procedures are at the heart of the motion for class certification in order to prove that each debtor was left a similarly illegal message, and at the heart of liability, too, to show that each of the messages violated the FDCPA. The scripts will undoubtedly be part of the defendant's policies, practices and procedures. Plaintiff moves to compel.

**B. Recordings of telephone conversations concerning the collectors that left messages for plaintiff.**

The discovery materials produced to-date indicate that defendant records some or all of its collectors' telephone messages and phone calls. Defendant has produced six telephone messages, none of which have the violation complained of, and certain written materials produced, such as collector consents to be recorded indicate this, too.

It is clear that the six messages left are not representative of the messages from the class period. Defendant produced a document, bates numbered RL0034 which shows a redline

6

version of a script for messages to debtors. Defendant has requested that this document remain confidential.

The "old" message indicates that scripts that contain some of the violations plaintiff complains of in this lawsuit were used by defendant at some point – but because no other documents have been produced, plaintiff does not know when except that plaintiff received such messages.

None of the recordings produced to date contain any old script voice mails. It does not make sense for defendant to have a mere six recordings of its employees. Plaintiff suspects that defendant has produced only recordings that it wants to produce, and has withheld other recordings, in order to avoid class certification. Plaintiff requests that all of the recordings that defendant has, without regard to date, be produced.

### C. The Net Worth of the Defendant and Supporting Documents.

Damages for a class action under the FDCPA,. 15 U.S.C. § 1692k states that the maximum damages is "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." § 1692k(a)(2)(B)(ii). Interrogatory 8, and document request 15 are unquestionably calculated to lead to relevant information (let alone discovery of relevant information), and should be compelled. *Mailloux v. Arrow Financial Services, LLC*., 2002 WL 246771 (E.D.N.Y. Feb. 21, 2002) (In FDCPA class action, net worth is "unquestionably relevant and discoverable. In any event, plaintiff need not accept defendant's interpretation of its financial data through representations in an affidavit but is entitled herself to examine the data underlying defendant's statement of net worth.").

Defendant's position as to net worth is that it is premature. This position is unsupportable. Production of this information before class certification is proper. *Scott v.*

7

*Universal Fidelity Corp.*, 42 F.Supp.2d 837 (N.D.Ill.Mar. 19, 1999) (compelling net worth information five months before class certification ruling), abrogated on other grounds by *Saunders v. Jackson*, 299 F.3d 998 (7th Cir. 2000).

If defendant has no net worth, bringing a motion for class certification would not be in the best interest of the class because 1% of zero is zero. In that case, the class would not recover at all under § 1692k(a)(2)(B)(ii), and each class member would be well advised to bring an individual lawsuit.

### D. Identities of the Class Members.

Plaintiff propounded interrogatories 6, 7 and 8 to determine the identities of the class members. Defendant has stonewalled, arguing that such information is not discoverable until after class certification. Defendant is wrong. The law is clear that a party may take discovery on issues that bear on whether class certification is appropriate. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, n.13 (1978). As the Seventh Circuit stated in *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981):

> The burden of establishing class requirements rests on plaintiff, but it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house. [Eggleston, 657 F.3d at 895.]

Accord, *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571-72 (2d Cir. 1982) ("[I]n making a certification decision, a judge must look somewhere "between the pleading and the fruits of discovery ... Enough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad of details that cover the terrain.") (citations omitted); *Dillon v. Bay City Construction Co., Inc.*, 512 F.2d at 804 (4th Cir. 1979)

8

(reversing District Court's summary dismissal of case because "the plaintiffs were entitled to discovery which would bear on the always troublesome questions of whether this was or ought to be considered a class action, see F.R.Civ.P. 23 and the terms and conditions, if any, on which it could proceed."); *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 214 (N.D.Ill. 2002) (FDCPA Case); *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 341( N.D.Ill. 2001) (FDCPA case); *Nash v. City of Oakwood*, 90 F.R.D. 633, 636-637 (S.D. Ohio 1981); *National Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).

These materials are discoverable, and should be compelled.

### E. Responses to Requests for Admission.

Defendant's responses to plaintiff's requests for admission deny or state that it does not know anything about the subjects requested. Exhibit 1. This is not a proper way to respond. Plaintiff requests that the Court order defendant to revise its responses so that the parties may narrow the issues to be decided in this case.

### F. Electronic Discovery

Plaintiff requested in the telephone discovery conference that defendant's materials be produced in native format, including all metadata. This is important because many of the materials produced are undated, including the revised telephone script, Document Number RL0034, and the six recordings, assigned RL0001, that counsel suspects are not from the relevant timeframe. Such requests are valid under the new discovery rules, and courts have acknowledged the usefulness and discoverability of such requests. *E.g Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007). Defendant generally agreed to do this, but has not done so. Plaintiff needs such information to file his motion for class certification, and therefore moves to compel.

### G. Other Materials.

Finally, there are substantial other materials that plaintiff has requested that defendant has not provided. These other requests were the subject of numerous telephone calls to defendant on March 13, 16 and 17, 2009, which were either not answered, or not returned.

#### 1. Information regarding plaintiff.

The most fundamental of information plaintiff requested is information about himself: Document Request 1 asks for documents relating to plaintiff or plaintiff's account. Defendant has produced a matrix regarding when it called plaintiff, but nothing else. It is clear that the documentation and data that defendant has that touches plaintiff is discoverable.

Defendant has more documents and data that are responsive to document request 1. Collection agencies invariably have "collection notes" that keep track of all contacts with a debtor, whether written or oral – these have not been produced. Further, collection agencies have an affirmative obligation under 15 U.S.C. 1692g(a) to send at least one letter to every single debtor within five days of the initial contact that explains the debtor's rights to verification of the debt. No such documents have been produced.

#### 2. Bona Fide Error Defense

Plaintiff propounded discovery as to defendant's "bona fide error" defense in this case, too. See Document request 3, 5, 6, 7, 8, 9 and 11. Under the FDCPA, 15 U.S.C. § 1692k(c), a defendant may choose to bring a defense to liability: Redline has chosen to assert such a defense, and plaintiff is therefore entitled to all information and documentation regarding such.

"As the text of § 1692k(c) indicates, the procedures component of the bona fide error defense involves a two step inquiry: first, whether the debt collector 'maintained' i.e., actually employed or implemented procedures to avoid errors; and, second, whether the procedures were

'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006) (reversing district court's entry of summary judgment for collector based on bona fide legal error, holding that whether collector's legal error was reasonable was a question of fact for the jury). The error must be one made "in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 538 (7th Cir. 2005) (mentioning legal error in dicta).

Although traditionally bona fide errors have been held only to include minor clerical errors, there is a "growing minority" of courts that hold that bona fide errors of law may also be protected by § 1692(c). *Id*. The Seventh Circuit has not spoken directly to this point, but has indicated that legal error may provide a basis for avoiding liability. *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002); *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 538 (7th Cir. 2005) (dicta).

"Under Fed. R. Civ. P. 26, parties are entitled to discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Thus, the court finds that the proper scope of discovery in this case does include whether or not Defendants' policy [which was their affirmative defense] was effective." *EEOC v. Bloomin' Apple Rockford I, LLC*, 04 C 50375, 2006 U.S. Dist. LEXIS 2708 (N.D. Ill. Jan. 24, 2006); *Morris v. Swank Educ., Enters.*, 04 C 50056, 2004 U.S. Dist. LEXIS 16655 (N.D. Ill. Aug. 20, 2004).

Plaintiff asked for this information, and defendant has responded that it has produced materials. However, the materials produced cannot be complete. Defendant has indicated that it relied upon an attorney's advice in trying to comply with the FDCPA. However, no attorney materials have been produced, and no privilege has been asserted. Plaintiff is entitled to these materials, and requests that they be produced.

11

**CONCLUSION**

Plaintiff respectfully requests that the Court enter an order requiring defendant to fully respond to plaintiff's first discovery requests. Specifically, plaintiff seeks an order compelling production of the following:

   a. All policies, procedures and practices in place at any time between October 27, 2007 and October 27, 2008.
   b. All telephone scripts used between October 27, 2007 and October 27, 2008.
   c. All recordings of telephone messages between October 27, 2007 and October 27, 2008.
   d. The net worth of Redline, plus all supporting documentation.
   e. The names, addresses, emails and telephone numbers for all class members.
   f. Full responses to plaintiff's first requests for admission.
   g. All documents and data concerning the plaintiff or the plaintiff's account or the alleged debt.
   h. All documents and data concerning defendant's bona fide error defense.

Respectfully submitted,

/s/ Alexander H. Burke

Curtis C. Warner   cwarner@warnerlawllc.com
WARNER LAW FIRM, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 737
Chicago, Illinois 60601
(312) 238-9820 (TEL)


Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 732
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com